*798 OPINION.
Arundell :
The instant proceeding has been presented by the parties on the narrow question of whether the resolution of the board of directors of petitioner plus the entries on petitioner’s books in the taxable year constituted an irrevocable setting aside of an amount for the payment or discharge' of a debt. Although sections 26 (c) (2) and 351 (b) (2) (B), as amended, with which we are here concerned, contain different-requirements for the credit and deduction *799 respectively granted, the parties seem agreed that the provisions of both sections are fulfilled if in fact petitioner irrevocably set aside the claimed amount in the taxable year. In order to obtain the benefit of the cited sections, petitioner must show that the amounts were set aside and that such setting aside was irrevocable. Accordingly, we shall consider the components of the phrase “irrevocably set aside” severally.
The resolution of the board of directors of petitioner directed that the amount in question be “irrevocably set aside in a special fund or reserve account * * * to be used exclusively for the retirement of the certificates of indebtedness' * * *.” In accordance with this direction an account entitled “Reserve for the retirement of Certificates of Indebtedness” was set up on petitioner’s books and the amount directed by the board of directors was credited thereto. Petitioner’s surplus account was charged with a corresponding amount. This treatment of the amount by petitioner without doubt constituted a setting aside. While it is true that the amounts were not delivered to a trustee, we do not think that material. If Congress had intended that the setting aside be accomplished by delivery to a trustee or other person outside the corporation, it would have made its intent known. Commissioner v. Strong Manufacturing Co., 124 Fed. (2d) 360.
We now turn to the question of whether the setting aside was irrevocable. The provisions of the contract between petitioner and the certificate holders required petitioner to “irrevocably set aside fifty per cent (50%) of its net earned income each calendar year for the retirement or payment of the principal amount of Certificates of Indebtedness outstanding * * This provision was a condition precedent to the purchase of certificates from petitioner. Thus it is clear that there was consideration for the resolution of the board of directors of petitioner. It is likewise clear that, because of the presence of such consideration, the book entries made pursuant to the resolution of the board of directors could not be reversed at the will of the directors. The rights of the certificate holders would intervene if petitioner attempted to treat the amount deposited in the special account as its own.
Nor does Securities Co. of New Jersey, 45 B. T. A. 1048, require a different result. In that case the resolution of the board of directors, coupled as it was with the appropriate book entries, was a purely voluntary act of the taxpayer. The contract with the creditors did not call for such setting aside and we found that there was no consideration for the action. In such circumstances the setting aside was not deemed “irrevocable.”
*800 Respondent raises a further barrier to the coveted credits. The resolution of the board of directors stated that the amounts paid into the special account might be paid to the certificate holders, retained in the form of bank deposits, or “used to make loans if they are considered to be choice risks.” Inasmuch as petitioner is engaged in the business of making loans, respondent urges that the resolution, allowing as it does the investment of the funds in choice risks, in effect permits the use of the money in petitioner’s business. It is possible that the phrase read by itself may be so interpreted. The resolution provided, however:
That such sums so set aside from time to time in the special fund or reserve account shall be irrevocably set apart and shall not be used for any other purpose; and the Treasurer is hereby authorized and instructed to turn said funds over to the Certificate holders at any time if they request it in writing.
Thus read in its entirety, the resolution clearly prohibits the use of the funds of the special account in petitioner’s business. It seems clear that the investment of the funds in choice risk loans if made would enure to the benefit of the certificate holders rather than to the petitioner. It is not unusual that funds set aside for particular purposes be put to work -with proper safeguards rather than to lay idle and there have been times when the safety of such a fund was better guarded by this method than when left in the form of cash in the bank. However, if this be an objection it should be observed that the funds actually were retained in petitioner’s bank account at all times and were neither used in the business of petitioner nor in the making of choice risk loans.
The surtax on undistributed profits and the personal holding company surtax were designed to force a distribution of corporate earnings to the stockholders. But Congress recognized that there were many legitimate reasons which prevent corporations from distributing their entire earnings and the credit and deduction provisions were designed to care for these cases. There is no occasion to construe the sections before us so as to deny the very relief Congress sought to grant. The revenue may be safeguarded without so harsh a construction.
Our conclusion is that there was an irrevocable setting aside of the sum of $1,200 in the taxable year. It follows that petitioner is entitled to the claimed credit under section 26 (c) (2) for purposes of the surtax on undistributed profits and to the deduction from adjusted net income granted by section 351 (b) (2) (B), as amended, for purposes of the personal holding company surtax.
Decision will be entered for the petitioner,